UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RADHA BOLIVAR and ANGELICA GOATACHE,<br><br>                    Petitioners,<br><br>v.<br><br>NETRADYNE, INC.,<br><br>                    Respondent. | Case No.:  3:25-cv-1722-RBM-KSC<br><br>**ORDER RESOLVING JOINT MOTION FOR DETERMINATION OF DISCOVERY DISPUTE**<br>**[Dkt. No. 4]** |

1

Before the Court is the parties' Joint Motion for Determination of Discovery Dispute ("Joint Motion"), which was filed November 10, 2025. Dkt. No. 4. Having reviewed the parties' briefing, heard arguments made during the December 23, 2025, Discovery Conference, and reviewed Netradyne's Supplemental Statement, the Court's Order is as follows:

## I.    BACKGROUND

### a.  Procedural History

This matter relates to an active litigation in the Eastern District of Tennessee District Court at Chattanooga, *Bolivar et al. v. HMD Trucking, Inc et al.*, No. 1:24-cv-00155-TRM-MJD (E.D. Tenn.). Therein, plaintiffs Radha Bolivar and Angelica Goatache (collectively "petitioners") served a subpoena on Netradyne, Inc. ("Netradyne"), a non-party to the litigation based in San Diego. As a result of Netradyne's allegedly deficient initial production and written responses, petitioners filed a Motion to Issue Order to Show Cause ("OSC Motion") alleging that Netradyne should be found in contempt of the Tennessee District Court. Dkt. No. 4 at 10-12. The Tennessee District Court held that it did not have jurisdiction to enforce the subpoena and denied petitioners' OSC Motion. *Id*. at 12.

Seeking to enforce the subpoena, petitioners filed a Motion to Enforce Out of District Subpoena ("Motion") on July 7, 2025 with this Court. Dkt. No. 1. That same day, the Court denied petitioners' Motion without prejudice and ordered the parties to file the instant Joint Motion for Determination of Discovery Dispute. Dkt. No. 2. On November 10, 2025, the parties filed the Joint Motion. Dkt. No. 4. After reviewing the Joint Motion, the Court issued an Order scheduling a Discovery Conference for December 23, 2025. Dkt. No. 6. During the Discovery Conference the parties made oral argument in support of their respective positions.[1] At the conclusion of the Discovery Conference, the Court ordered counsel for respondent Netradyne to file "cost estimates for Netradyne to produce the non-

---

[1]     The Discovery Conference was held on the record.

video data described in Issue #1 and Issue #5 [Dkt. No. 4 at 7, 9] no later than **1/16/2026**.” Dkt. No. 7 (emphasis in original). On December 29, 2025, with good cause appearing, the Court granted respondent's request for a one-week extension to file the “cost estimates”. Dkt. No. 8.

### b. The Parties

Petitioners in this matter are the plaintiffs in the underlying litigation pending in the Eastern District of Tennessee. Defendants in the underlying litigation are Antonio Wortham (“Wortham”) and HMD Trucking Inc. (“HMD”). Wortham works as a truck driver at HMD. Dkt. No. 4 at 9-10.

Netradyne, respondent in this matter, provides truck driver information through video and non-video data to HMD. Dkt No. 1 at 2. In addition, Netradyne “is a Delaware corporation with a principal place of business located within this district at 9171 Towne Center Drive., Ste. 110, San Diego, CA 92122.” Dkt. No. 4 at 14.

### c. Relevant Facts

#### i. The Underlying Litigation

The underlying action involves a car accident that occurred on March 1, 2023, between petitioners and defendant Wortham. Dkt. No. 1-2 at 2. Petitioners allege that Wortham negligently operated his employer's truck, ultimately causing petitioners to be injured. *Id.* Petitioners also allege that defendant HMD negligently hired and supervised Wortham. *Id.* Petitioners are seeking a total of $6,000,000 in damages, $2,000,000 in restitution and $4,000,000 in punitive damages. Notice of Removal, *Bolivar et al. v. HMD Trucking, Inc et al.*, No. 1:24-cv-00155-TRM-MJD, Dkt. No. 1-2 at 11 (E.D. Tenn. Apr. 19, 2024). The police report made following the accident indicates that the damage was minor, no party was transported to the hospital, no airbags were deployed, and no injuries were incurred. *See* Dkt. No. 4-6.

#### ii. The Subpoena

Key to petitioners' allegations against HMD is that HMD failed to comply with the Federal Motor Carrier Safety Regulations by negligently hiring and training Wortham as a

3:25-cv-1722-RBM-KSC

truck driver. Dkt No. 4 at 10 (citation omitted). Thus, on February 20, 2025, petitioners served the at-issue subpoena on Netradyne seeking "[a]ny records, documents, videos, or photographs in your possession related to Antonio Wortham, driver for HMD Trucking, Inc." *Id.* (citation and quotations omitted). On April 4, 2025, in response to the subpoena, Netradyne produced records related to defendant Wortham that were created on the day of the underlying accident. *Id.* However, Netradyne alleged that it could not produce all data pertaining to defendant Wortham because "Netradyne's standard customer data retention policy is to retain video data for 90 days plus the current month and non-video data for 120 days plus the current month. Outside of this data retention period, data is deleted unless subject to a data preservation request or other valid legal hold." *Id.* at 17 (quotations omitted).

### iii.  The Remaining Issues Regarding Netradyne's Production

After engaging in court-ordered meet and confer efforts, the parties were unable to informally resolve five issues related to Netradyne's production of documents and data. Below are the remaining issues raised by petitioners and Netradyne's responses:

*"Issue #1 - Respondent Has Yet To Produce Non-Video Data That It Has Admitted It Has In Its Possession Within Its Retention Period And Which It Agreed to Already Produce"* [Dkt. No. 4 at 7, 17].

Petitioners allege that their subpoena triggered a preservation hold on Netradyne relating to data from late 2024 and early 2025. Dkt. No. 4 at 7. They assert that while Netradyne has produced video data from this time period, it has not produced the non-video data that is in its possession of as a result of the hold. *Id.* During the Discovery Conference held on December 23, 2025, petitioners alleged that this post-accident non-video data is relevant to their claim against HMD of negligent hiring and training of Wortham as the data could be used to show the categories of information that Netradyne provided to HMD about its drivers.

Netradyne responds that it has produced all relevant video and non-video data from the day of the accident, March 1, 2023. As to the post-accident data, Netradyne argues that

3:25-cv-1722-RBM-KSC

this video and non-video data is not relevant or proportional because the time period for this data spans over one and a half years after the accident. Dkt. No. 4 at 17. Nonetheless, in an effort to compromise, Netradyne "produced nearly 5 gigabytes of pre-subpoena video data taken on 40 separate days during the period November 1, 2024 through March 1, 2025 …." *Id.* Netradyne did not, however, produce the allegedly irrelevant non-video data for the same period because "retrieval … would be much more burdensome … because it is held in an off-site 'cold storage' database." *Id.*

During the December 23, 2025, Discovery Conference, Netradyne represented that the exact categories of data it provided HMD about HMD drivers were already available to petitioners in the non-video data produced from the date of the accident. Netradyne also argued that the data is not relevant because petitioners' negligent hiring and training claim against HMD could only be proved with evidence of what HMD did ***prior*** to the accident.

Petitioners ask this Court to compel Netradyne to produce the non-video data subject to the hold triggered by the service of the subpoena.

*"Issue #2 – Petitioner Requests a Declaration Under Penalty of Perjury Related to Correspondence with HMD Related to the Data Hold" [Dkt. No. 4 at 8, 18].*

Petitioners allege that during their meet and confer efforts with Netradyne's counsel, they learned that HMD instructed Netradyne to preserve all data related to the March 1, 2023 accident. Dkt. No. 4 at 8. Petitioners claim that they are not in possession of any such communication. *Id.* Netradyne responds that the request it received from HMD was made telephonically, thus, no responsive written communications with HMD's counsel related to the March 1, 2023, hold exist. *Id.* at 18. Petitioners ask this Court to compel Netradyne to sign a declaration under penalty of perjury stating that the request was made orally, and no written documents exist. *Id.* at 8.

*/ / /*

*/ / /*

*/ / /*

*/ / /*

3:25-cv-1722-RBM-KSC

*"Issue #3 – Petitioner Requests a Declaration Under Penalty of Perjury Related to Documents Potentially Retained Through a Third-Party Litigation Hold"* [Dkt. No. 4 at 8, 18].

Petitioners next allege that through their meet and confer efforts, they "learned of a data hold on Netradyne data related to a class action that might uncover data related to Wortham outside their standard retention policy and requested any documents related to HMD and Wortham as result of that hold." *Id.* at 8. Netradyne represents that the class action hold was requested on August 16, 2024 and lifted for all but one driver shortly after January 7, 2025. *Id.* Because the hold was lifted far in advance of the date petitioners' subpoena was served on February 20, 2025[2] [Dkt No. 4 at 10], Netradyne informed petitioners that there was nothing to produce resulting from the class action hold. Dkt. No. 4 at 8. Petitioners ask this Court to compel Netradyne to sign a declaration under penalty of perjury stating that Netradyne is not in possession of any such documents.

*"Issue #4 – Petitioner Requests a Declaration Under Penalty of Perjury Related to Scorecards"* [Dkt. No. 4 at 8, 18].

With regards to the fourth issue, petitioners allege that the declaration of an HMD representative states that Netradyne creates "scorecards" of individual drivers, which petitioners did not receive as a part of Netradyne's production. *Id.* at 8-9. Netradyne responds that it does not make scorecards and therefore cannot produce one specific to defendant Wortham. *Id.* at 19. Petitioners ask this Court to compel Netradyne to sign a declaration under penalty of perjury stating that Netradyne does not make scorecards for HMD's drivers.

*/ / /*

*/ / /*

*/ / /*

---

[2]    The Record is inconsistent as to the date the subpoena was actually served, the Court will use the February 20, 2025 date. Dkt No. 4 at 10.

3:25-cv-1722-RBM-KSC

*"Issue #5 – Respondent Has Confirmed Data Can Be Searched Outside The Retention" Period* [Dkt. No. 4 at 9].

Finally, petitioners allege that they are entitled to confirmation that all data related to defendant Wortham was deleted in accordance with Netradyne's retention policy. *Id.* at 9. Petitioners allege that Netradyne informed them that it is possible to do a complete search of Netradyne's stored data and confirm that no information was unintentionally retained. *Id.* Netradyne responds that while it is technically possible to conduct a search to confirm all data related to defendant Wortham was deleted in accordance with Netradyne's retention policy, the burden of doing so far outweighs any potential benefit to petitioners' case. Petitioners ask this Court to compel Netradyne to conduct this search.

## II.   LEGAL STANDARD

The Court has broad discretion to manage discovery. *See U.S. Fidelity & Guar. Co. v. Lee Inv. LLC*, 641 F.3d 1126, 1136 n.10 (9th Cir. 2011) ("District courts have wide latitude in controlling discovery, and their rulings will not be overturned in the absence of a clear abuse of discretion."); *Hallett v. Morgan*, 296 F.3d 732, 751 (9th Cir. 2002). Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." Information need not be admissible to be discoverable. *Id*. In the discovery context, information is relevant if it relates to "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." *In re Williams-Sonoma, Inc.*, 947 F.3d 535, 539 (9th Cir. 2020) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 350-51 (1978)).

While broad, the scope of discovery is not unlimited. *See ATS Prods., Inc. v. Champion Fiberglass, Inc.*, 309 F.R.D. 527, 531 (N.D. Cal. 2015) ("Relevancy, for the purposes of discovery, is defined broadly, although it is not without ultimate and necessary boundaries."). Relevant discovery must also be "proportional to the needs of the case …." Fed. R. Civ. P. 26(b)(1). To determine whether discovery is proportional, the Court evaluates "the importance of the issues at stake in the action, the amount in controversy,

3:25-cv-1722-RBM-KSC

the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

"The party seeking to compel discovery has the burden of establishing that its request satisfies the relevance requirement of Rule 26." *Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, No. 17CV1943-LAB (LL), 2019 WL 581715 at *3 (S.D. Cal. Feb. 13, 2019). In turn, the party resisting the discovery has the burden to show that the discovery is objectionable by "clarifying, explaining, and supporting [their] objections based on relevance and privilege." *Mahil v. Option Care Enters., Inc.*, No. 20CV1559-BEN-MDD, 2021 WL 2550084 at *1 (S.D. Cal. June 21, 2021) (internal quotations omitted) (citing *DIRECTV, Inc. v. Trone*, 209 F.R.D. 455, 458 (C.D. Cal 2002); *Blankenship v. Hearst Corp.*, 519 F.2d 418, 429 (9th Cir. 1975)).

Under Rule 45, any party may serve a subpoena commanding a non-party to "produce designated documents, electronically stored information, or tangible things in that person's possession, custody or control." Fed. R. Civ. P. 45(a)(1)(A)(iii). Because a subpoena is a discovery tool, it "is subject to the relevance requirements set forth in Rule 26(b)." *Kellgren v. Petco Animal Supplies, Inc.*, 2015 WL 11237636 at *2 (S.D. Cal. Apr. 10, 2015) (citing Fed. R. Civ. P. 26(b)(1)).

III.   **ANALYSIS**

    a.   **This Court Has Jurisdiction to Enforce the Subpoena and No Exceptional Circumstances Exist Warranting Transfer of the Instant Dispute to the Eastern District of Tennessee**

Before analyzing the substance of the discovery disputes, the Court must first address whether it has jurisdiction to enforce the at-issue subpoena. Because Netradyne's principal place of business is in San Diego, California [Dkt. No. 4 at 14] and the subpoena identifies San Diego as the place of compliance [Dkt. No. 1-3 at 16], this Court has jurisdiction to enforce the subpoena. *Youngevity Int'l, Corp. v. Smith*, No. 16-CV-704 BTM (JLB), 2017 WL 6418961 at *3 (S.D. Cal. Dec. 15, 2017) ("Absent a transfer, only a court

in the district of the place of compliance has jurisdiction to compel compliance, or modify or quash a subpoena.")

Next, the Court must determine whether the instant dispute should be transferred back to the Eastern District of Tennessee District Court. Under Federal Rule of Civil Procedure 45(f) "[w]hen the court where compliance is required did not issue the subpoena, it may transfer a motion under this rule to the issuing court if the person subject to the subpoena consents or if the court finds exceptional circumstances." Because Netradyne did not consent, this Court must find exceptional circumstance to transfer the instant dispute.

The Advisory Committee notes provide guidance as to when "exceptional circumstances" exist and state "the proponent of transfer bears the burden of showing that such circumstances are present." Advisory Committee Note to 2013 Amendments of Fed. R. Civ. P. 45. While the primary consideration should be to avoid "burdens on local nonparties subject to subpoenas … it should not be assumed that the issuing court is in a superior position to resolve subpoena-related motions." *Id.* "[T]ransfer may be warranted in order to avoid disrupting the issuing court's management of the underlying litigation, as when the court has already ruled on issues presented by the motion or the same issues are likely to arise in discovery in many districts." *Id.* However, transfer is only appropriate if such interests outweigh the interests of the nonparty in having the subpoena resolved locally. *Id.*

Petitioners argue that exceptional circumstances exist because the court in the underlying matter is more familiar with the case and has already "ruled on the discoverability" of the at-issue information by ordering Netradyne to comply with the subpoena. Dkt. No. 4 at 13. While certainly very familiar with the matter, it does not appear that the Eastern District of Tennessee Court has substantively analyzed and ruled on the parties' arguments regarding the relevance of the evidence sought in petitioners' subpoena. In fact, in the order petitioners cite in support of this allegation, the court specifically noted that it "has no way to determine—and neither side makes issue of—whether the requested information is relevant." Order Denying Motion to Quash or in the Alternative for

3:25-cv-1722-RBM-KSC

Protective Order, *Bolivar et al. v. HMD Trucking, Inc et al.*, Dkt. No. 31 at 1 n.2 (E.D. Tenn. Mar. 21, 2025). Thus, the Tennessee Court did not issue a ruling on the "discoverability" of the evidence.

Petitioners' only other argument that exceptional circumstances exist is that the court in the underlying matter is more familiar with the factual issues and procedural posture of the case. Dkt. No. 4 at 13. Mere familiarity with the case does not support a finding of exceptional circumstances. *See In re Subpoena on Sorrento Therapeutics, Inc.*, No. 3:17-CV-2442-WQH-NLS, 2018 WL 788899 at *2 (S.D. Cal. Feb. 8, 2018) ("[F]amiliarity with the claims at issue and the factual history of the case … is a concern that exists in almost every such motion [to compel] and cannot alone be sufficient to constitute an "'extraordinary circumstance.'"); *In re Arby's Rest. Grp., Inc. Data Sec. Litig.*, No. 19-MC-80089-SK, 2019 WL 13401929 at *2 (N.D. Cal. May 22, 2019) (finding "Arby's fail[ed] to demonstrate exceptional circumstances based on the fact that the presiding judge [was] more familiar with the underlying litigation and the "'needs of the case.'") (citations omitted); *Isola USA Corp. v. Taiwan Union Tech. Corp.*, 2015 WL 5934760, at *3 (D. Mass. June 18, 2015) ("[T]here is no question that the [issuing court] is more familiar with the procedural and substantive aspects of the underlying patent litigation. However, that cannot be what Congress meant when it required a finding of exceptional circumstances, otherwise the exception would swallow the rule. As a general matter, a Rule 45 subpoena-related motion will always be resolved by a court less familiar with the underlying litigation.")

Accordingly, the Court **DENIES** petitioners' request to transfer the instant dispute to the District Court in the Eastern District of Tennessee.

      b.  **Petitioners' Request That Netradyne's Objections be Deemed Waived is Denied**

As a second threshold issue, petitioners argue that Netradyne's failure to timely raise objections to the subpoena amounts to a waiver of all objections. The subpoena was served on February 20, 2025, making the date of compliance March 7, 2025. Dkt. No. 4 at 10;

3:25-cv-1722-RBM-KSC

Fed. R. Civ. P 45(d)(2)(B) ("The objection must be served before the earlier of the time specified for compliance or 14 days after the subpoena is served.") Although Netradyne communicated with petitioners, Netradyne did not serve formal objections prior to March 7, 2025. *Id.* Typically, failure to timely serve objections waives all grounds for objection. However, "[i]n unusual circumstances and for good cause, … the failure to act timely will not bar consideration of objections [to a Rule 45 subpoena]." *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 636 (C.D. Cal. 2005)[3] (collecting cases). "Courts have found unusual circumstances where, for instance, the subpoena is overbroad on its face and exceeds the bounds of fair discovery and the subpoenaed witness is a non-party acting in good faith." *Id.* (collecting cases). In *Moon*, the court found "unusual circumstances" existed because the subpoena was overbroad. *Id.* Thus, the defendant's failure to timely raise objections did not amount to a waiver of all grounds for objection because the subpoena was overbroad. *Id.*

Here, the Court could come to the same conclusion. The at-issue subpoena seeks "[a]ny records, documents, videos, or photographs in your possession related to Antonio Wortham, driver for HMD Trucking, Inc." This subpoena is broad on its face and expansive such that it has scant limitations on the type of information sought and no temporal limitation. *See e.g., Gomez Garcia v. Stemilt AG Servs. LLC*, No. 2:20-CV-00254-SMJ, 2021 WL 9145038 at *4 (E.D. Wash. Mar. 24, 2021) (finding a subpoena demanding "Any and all DOCUMENTS and COMMUNICATIONS in YOUR possession related to hiring, firing, discipline, payroll, hours worked, and daily production for" named Plaintiffs and forty-eight putative class members … " was overbroad.) Petitioners make no arguments that establish how ***all*** documents in Netradyne's possession related to Wortham are relevant. Moreover, and as discussed in detail below, the lack of temporal limitations

---

[3]     The Court is perplexed by petitioners' reliance on this case to assert that "[f]ailure to serve timely objections waives all grounds for objection, including privilege." Dkt. No. 4 at 14. Petitioners' own case law directly confutes their waiver argument.

makes this subpoena overbroad because it purports to require the production of documents for years after the accident occurred. And as Netradyne pointed out in the December 23, 2025, Discovery Conference, the "relevant" information contained in the post-accident data—the "categories" of data—is duplicative of information already produced to petitioners. Thus, the Court could conclude that Netradyne's objections to the subpoena have not been waived.

Either way, the Court will not compel Netradyne to make productions that are not proportional to the claims or defenses in this case. *See Sanchez Y Martin, S.A. de C.V. v. Dos Amigos, Inc.*, No. 17CV1943 LAB (JMA), 2018 WL 2387580 at *4 (S.D. Cal. May 24, 2018); *see also* Fed. R. Civ. P. 26(b)(2)(C)(iii) ("On motion or ***on its own***, the court must limit the frequency or extent of discovery otherwise allowed by these rules if it determines that … the proposed discovery is outside the scope permitted by Rule 26(b)(1).") (emphasis added). As discussed in greater detail below, the discovery petitioners seek goes far beyond the scope permitted under Rule 26(b)(1).

### i.   Issue #1 - The Cost of Production of Post-Accident Non-Video Data Outweighs the Potential Benefit Such Data Would Provide Petitioners

In order to be discoverable, evidence must be relevant to a party's claims or defenses. Fed. R. Civ. P. 26(b)(1). Attempting to meet their burden of establishing relevance, petitioners argue that the post-accident non-video data (the data for which Netradyne implemented a "hold" after it received the subpoena) is relevant to their claim of negligent hiring and training against HMD. Specifically, petitioners argue that they will be able to learn about Wortham's driving practices from reviewing the categories of data that Netradyne provided HMD. In other words, petitioners argue the ***categories*** of data are relevant, not the data. In turn, an understanding of these categories allows petitioners to understand the type of information that HMD possessed as it relates to Wortham's driving. Because discovery is broad, the Court finds the post-accident non-video data to be of only marginal relevance.

3:25-cv-1722-RBM-KSC

Even assuming the information may be relevant, discovery must also be proportional. In determining proportionality, courts consider "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). Rule 26(b)(2)(C)(i) requires the court to limit the frequency or extent of discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative." In the context of Fed. R. Civ. P. 45(d)(1), "an evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party," and requires the court to consider "such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described, and the burden imposed." *Moon*, 232 F.R.D. at 637.

Netradyne argues production of post-accident non-video data is not proportional. It asserts that the benefit here is minimal because petitioners already have access to non-video data from the date of the accident; thus, they already have access to the categories of data that Netradyne provided HMD regarding Wortham's driving. As it relates to the burden of production, Netradyne states: "[t]he estimated cost for the engineer work is approximately $2,000. In addition, Netradyne would incur an estimated $2,000 or more in internal company charges for legal review and external legal fees for review and processing production of the data, for a total estimated cost of at least $4,000." Dkt. No. 9 at 2.

The Court finds this discovery is not proportional to the needs of the case and therefore goes beyond the scope permitted under Fed. R. Civ. P. 26(b)(1). Given the duplicate nature of the discovery sought and the large burden on Netradyne to produce additional non-video data from over one-and-a-half years after the accident, the Court **DENIES** petitioners request as to Issue #1.

/ / /

/ / /

/ / /

/ / /

13

**ii. Issue #5 – The Cost of Confirming That All Pre-Accident Data Relevant to Defendant Wortham Was Deleted in Accordance with Netradyne's Retention Policy Outweighs the Potential Benefit Such Inadvertently Retained Data Would Provide Petitioners**

Petitioners allege that through the parties meet and confer efforts, they learned that it is possible for Netradyne to perform a search of all pre-accident data to confirm that no data related to defendant Wortham was unintentionally retained. To the extent it exists, the pre-accident data regarding defendant Wortham's is allegedly relevant to their claim of negligent hiring and supervision against HMD. Netradyne does not dispute this relevance but instead argues "[t]he effort and burden on Netradyne to further search its databases for data that it knows was not retained is unduly burdensome, and is not proportional to the needs of the underlying litigation, the importance of the issues at stake in the action, nor the importance of the discovery in resolving the issues." Dkt. No. 4 at 20. According to Netradyne's counsel, a Netradyne technician in India "believes he should be able to write and process a special 'script' for the computer to run, to direct the computer to determine if any data still exists for the subject driver notwithstanding the fact that no such data should exist per Netradyne's retention policy." *Id*. at 19-20. In Netradyne's Supplemental Statement regarding cost estimates, Netradyne estimates a minimum cost of $4,000, with the possibility of costs in excess of $10,000. Dkt. No. 9 at 2-3. Netradyne further estimates the work itself could take between seven to ten days.

The Court finds that the burden of conducting this search—both the cost and time—just to confirm that all pre-accident data related to defendant Wortham was deleted in accordance with Netradyne's stated retention policy, outweighs the potential benefit to petitioners' case. Thus, the Court **DENIES** petitioners' request as to Issue #5 because this discovery is not proportional to the needs of the case and goes beyond the scope permitted by Fed. R. Civ. P. 26(b)(1).

/ / /

/ / /

3:25-cv-1722-RBM-KSC

### iii. Issues #2, 3, and 4 – The Court Will Not Order Netradyne to Sign Declarations Under Penalty of Perjury

With regards to Issues 2, 3, and 4, the Court denies petitioners' requests to compel Netradyne to declare under penalty of perjury its representations that: "1) it has no documents related to requests from HMD to hold date related to the March 1, 2023[,] … [2)] [] it has no documents related to Wortham as a result of the class action data hold and [3)] []that is has no 'scorecards' related to Wortham …." Dkt. No. 4 at 16. Netradyne represented to the Court in its briefing and during the December 23, 2025 Discovery Conference that (1) the communication from HMD to Netradyne regarding the hold related to the accident occurred telephonically; (2) it is not in possession of any documents related to Wortham as a result of the class action data hold; and, (3) it does not make scorecards on individual drivers. To the extent petitioners want additional verification of these statements, petitioners can use the multitude of discovery tools available to them under the Federal Rules of Civil Procedure. Demanding declarations under penalty of perjury is not one such tool available to litigants.

### c. The Additional Relief Sought by Petitioners is Denied

In addition to their discovery related requests, petitioners also ask this Court to issue an Order to Show Cause why Netradyne should not be held in contempt of Court and an award of $5,970.00 in attorneys' fees and costs associated with the contempt proceedings. Dkt. No. 4 at 15-16. Petitioners argue that a subpoena is a court order, and that Netradyne's failure to comply with the subpoena amounts to a violation of a court order. *Id.* They allege that they are seeking the court order to "compel obedience with a court order, or to compensate the contemnor's adversary for injuries resulting from the non-compliance." Dkt. No. 4 at 15 (citations and quotations omitted). However, as evidenced by the Court's holdings above, the Court finds that Netradyne has fully complied with the subpoena. Petitioners also failed to articulate any injuries that they suffered from Netradyne's alleged non-compliance. Therefore, the Court **DENIES** petitioners' Motion to Issue Order to Show Cause and their request for attorneys' fees and costs.

#### d. **Netradyne's Attorney's Fees and Costs**

Netradyne also seeks to recover its fees and costs associated with (1) complying with the subpoena; and, (2) opposing petitioners' Motion to Issue Order to Show Cause filed in both this Court and the Eastern District of Tennessee.

First, with regards to Netradyne's costs of compliance with the subpoena, "Rule 45(d)(2)(B)(ii) *requires* the district court to shift a non-party's costs of compliance with a subpoena, if those costs are significant." *Legal Voice v. Stormans Inc.*, 738 F.3d 1178, 1184 (9th Cir. 2013) (emphasis added). In doing so, "the court must protect the non-party by requiring the party seeking discovery to bear at least enough of the expense to render the remainder non-significant." *Id.* (citations and quotations omitted). To ensure both parties are provided with the due process to which they are entitled, the Court **DENIES** without prejudice Netradyne's request for its cost of compliance fees to be shifted under Fed. R. Civ. P. 45(d)(2)(B)(ii) at this time. The Court will issue a separate briefing schedule in which Netradyne is to provide specific details of all costs incurred solely as it relates to compliance with the subpoena and petitioners will be given an opportunity to contest Netradyne's request. The purpose of this briefing is to allow the Court to evaluate whether Netradyne incurred significant costs in complying with the subpoena. *Legal Voice*, 738 F.3d at 1184.

Next, the Court denies Netradyne's request for Rule 45(d)(1) sanctions as it relates to its costs of opposing both of petitioners' Motions to Issue an Order to Show Cause. Netradyne argues that petitioners' blatant disregard of Rule 45—seeking to compel compliance of the subpoena in the improper district court—entitles it to reimbursement of the fees and costs associated with opposing the motion in the Eastern District of Tennessee. However, "the Ninth Circuit has interpreted Rule 45(d)(1) sanctions as applying primarily to reimburse a non-party's costs incurred in *complying* with a subpoena, not merely *litigating* a motion to quash." *Sci. Applications & Rsch. Assocs. (SARA), Inc. v. Zipline Int'l, Inc.*, No. 3:22-CV-04480-JSC, 2024 WL 5011603 at \*2 (N.D. Cal. Dec. 6, 2024) (emphasis in original). The same logic applies in the context of a motion to compel. *Id.*

(Denying a third-party's request for Rule 45(d)(1) sanctions for fees incurred while opposing a motion to compel.) Thus, the Court **DENIES** Netradyne's request for Rule 45(d)(1) sanctions associated with the cost of litigating the enforcement of the subpoena.

## IV.   CONCLUSION

Based on the above, the Court holds as follows:

1. The Court **DENIES WITH PREJUDICE** petitioners' request to transfer the case to the Eastern District of Tennessee District Court.

2. The Court **DENIES WITH PREJUDICE** petitioners' Motion to Issue an Order to Show Cause why Netradyne should not be held in contempt.

3. The Court **DENIES WITH PREJUDICE** petitioners request for reimbursement of their attorneys' fees and costs in the amount of $5,9700.00.

4. The Court **DENIES WITH PREJUDICE** petitioners' requests as to all five discovery issues.

5. The Court **DENIES WITHOUT PREJUDICE** Netradyne's request for fees and costs pursuant to Rule 45(d)(2) related to compliance with the subpoena.

6. The Court **DENIES WITH PREJUDICE** Netradyne's request for fees and costs pursuant to Rule 45(d)(1) related to litigating the various motions to enforce the subpoena.

**IT IS SO ORDERED**

Dated: February 12, 2026

Hon. Karen S. Crawford
United States Magistrate Judge

3:25-cv-1722-RBM-KSC